# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

————————————————

JANE DOE, an individual,

      Plaintiff,

      v.                                       Case No. 1:20-cv-01365-KWR-LF

LEWIS ROCA ROTHGERBER CHRISTIE LLP, a
limited liability partnership; and Does 1-60,
inclusive,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

      **THIS MATTER** comes before the Court upon Plaintiff's Motion for Leave to Amend Complaint (Doc. 110). Having reviewed the parties' pleadings and the applicable law, the Court finds that the motion is **NOT WELL TAKEN IN PART**, and therefore **DENIED.**

## BACKGROUND

      This diversity case is a malpractice action resulting from legal representation. Plaintiff was sexually abused by a former high school teacher, Michael Bowen Smith, while she attended Portsmouth Abbey School. Defendants represented Plaintiff to obtain a temporary restraining order against Smith. Plaintiff alleges that Defendants failed to inform Plaintiff of the conflicts of interests and the potential legal suit against Portsmouth Abbey School. Plaintiff asserts the following claims:

      Count I: Negligence

      Count II: Breach of Contract

      Count III: Breach of Fiduciary Duty

On December 8, 2022, Plaintiff filed a motion for leave to amend to add a claim for punitive damages against Defendants.

**LEGAL STANDARD**

In the Tenth Circuit, a party seeking to amend a complaint after a scheduling order deadline "must (1) demonstrate good cause to modify the scheduling order under Rule 16 of the Federal Rules of Civil Procedure and (2) satisfy the standards in Rule 15 of the Federal Rules of Civil Procedure for amending pleadings." *Nelson v. Chase*, No. 1:21-CV-00135, 2023 WL 1420032, at *2 (D. Utah Jan. 31, 2023) (citing *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014)).

Under Rule 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "In practice, this standard requires the movant to show the scheduling deadlines cannot be met despite the movant's diligent efforts." *Gorsuch*, 771 F.3d at 1241 (quotations and alterations omitted); *see also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) ("[A] finding of 'good cause' depends on the diligence of the moving party."). Good cause "obligates the moving party to provide an adequate explanation for any delay." *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1020 (10th Cir. 2018) (quotations omitted). Rule 16's good-cause requirement may be satisfied "if a plaintiff learns new information through discovery or if the underlying law has changed." *Gorsuch,* 771 F.3d at 1240. The amended claims are barred, "[i]f the plaintiff knew of the underlying conduct but simply failed to raise [the] claims." *Id.* "[I]f the movant fails to show good cause under Rule 16(b), there is no need for the Court to move on to the second step of the analysis, i.e., whether the movant has satisfied the requirements of Rule 15(a)." *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 990 (10th Cir. 2019).

Rule 15 allows a party to amend its pleading once as a matter of course in limited circumstances. Fed. R. Civ. P. 15(a)(1). Otherwise, a party may only amend its pleading with "opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15 directs that leave shall be freely given "when justice so requires." *Id.* "The purpose of the Rule is to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'" *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982)). A court may deny a motion for leave to amend where there has been "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. . . ." *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

The most important factor in deciding a motion to amend the pleadings is "whether the amendment would prejudice the nonmoving party." *Minter,* 451 F.3d at 1207; *cf. Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) ("Rule 15 was designed to facilitate the amendment of pleadings except where prejudice to the opposing party would result." (alteration, quotation marks, and citation omitted)). "Courts typically find prejudice only when the amendment unfairly affects the defendants in terms of preparing their defense to the amendment." *Minter*, 451 F.3d at 1208 (quotation marks and citation omitted). "Most often, this occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues." *Id.*

## DISCUSSION

Plaintiff seeks to add a claim for punitive damages against Defendants. Defendants object to the inclusion because of undue delay, prejudice to the Defendants, and futility of the

amendment. The Court will deny the amendment because Plaintiff has failed to show good cause to modify the scheduling order and provide an adequate explanation for the undue delay.

**I.        Plaintiff failed to show good cause to modify the scheduling order under Rule 16.**

The deadline for Plaintiff to seek leave to amend was December 30, 2021. Doc. 43. Plaintiff did not file her motion for leave to amend until December 8, 2022, almost a year after the scheduling deadline. Doc. 110. Therefore, Plaintiff is required to show good cause under Rule 16(b)(4). Plaintiff argues that there is good cause to allow her to amend her complaint. *Id*. Primarily, Plaintiff argues that she was diligent and there was no undue delay because she moved to amend her complaint after deposition testimony revealed newly discovered facts. *Id*. at 6. Defendants argue that the depositions did not provide newly discovered facts. Doc. 117 at 6-10. The Court finds that the deposition only revealed information about the underling conduct in the original complaint and did not provide newly discovered facts to support an additional claim. *Husky Ventures*, 911 F.3d at 1020 ("Because Rule 16 requires diligence, B55 and Mr. McArthur cannot establish good cause if B55 knew of the underlying conduct but simply failed to raise [its] claims." (internal quotation marks omitted)). Therefore, Plaintiff has failed to establish good cause.

Plaintiff argued that Scott Browning's deposition revealed the following new facts:

1.  "Despite earning substantial sums of money performing work on behalf of the Catholic Dioceses across the United States in the five years leading up to Plaintiff being referred to Lewis Roca, partner Scott Browning never disclosed this information to Plaintiff, who had been abused by a teacher at a Catholic school and who had a viable claim against that entity."

2.  "Browning never explained any actual or potential conflict of interest in Lewis Roca representing Plaintiff, given the firm's longstanding representation of the Catholic Dioceses, and Browning's representation of Catholic Dioceses against claims of sexual abuse."

3.  "Browning accepted Plaintiff's case, which was referred to him by Kathleen McChesney (a consultant), with whom he had previously worked on another Catholic Church-related matters. Browning knew that Plaintiff had been abused by her teacher at a religious school."

Doc. 110-1 at 2-3. The Court finds these facts are a reiteration of the underlining conduct. In her original complaint, Plaintiff alleged that "the lawyers never informed Plaintiff that the law firm routinely defended the Catholic Church in claims brought by abuse survivors", and that Mr. Browning "was the law partner in charge of the Religious Institution practice group at the firm and he and the group and the law firm routinely defended, not prosecuted the Catholic Church." Doc. 1-2 at ¶¶ 1, 16. Plaintiff further alleged that "McChesney referred Plaintiff to" Defendants, and that "the lawyers never explained to Plaintiff that Defendants' representation of Plaintiff presented a serious potential conflict of interest, because the Defendants' other clients included the Catholic Church." *Id*. at ¶ 1.

Plaintiff argues that the amount of money Defendants earned for work on behalf of the Catholic Dioceses is new information. Doc. 121 at 4. However, the amount of money earned simply supports Plaintiff's original allegation. During discovery, evidence is expected to come to light that may support Plaintiff's allegations. The Court does not find this evidence outside the scope of the underlining conduct alleged in the original complaint, and thus, the Court does not consider this information newly discovered.

5

Plaintiff argues that Bobbie Collins' deposition revealed the following new facts:

1. "Browning assigned Plaintiff's case for handling to two lawyers in the firm's Albuquerque office – Dennis Jontz and Bobbie Collins."

2. "Collins, an associate at the firm at the time, was apparently tasked with obtaining a restraining order for Plaintiff against Smith, something she never did during her representation of Plaintiff."

3. Collins knew that Plaintiff had been abused by her teacher at a Catholic school.

4. Despite having this information, Collins failed to tell Plaintiff about the firm's long history of representing the Catholic Church against claims of sexual abuse.

5. Collin recognized that Plaintiff had a "potentially adverse" interest in Portsmouth Abbey School, as evidenced by a "conflict check" email she sent her colleague at Lewis, Roca.

6. Collins never told Plaintiff that she (Plaintiff had an adverse interest to Portsmouth Abbey, who was paying Plaintiff's legal bills.

7. Collins never explained to Plaintiff the conflict inherent in Portsmouth Abbey paying her legal bills, even though Collins knew that Plaintiff had an adverse interest to Portsmouth Abbey.

8. Collins never told Plaintiff she had potential case against Portsmouth Abbey School and/or Smith

9. Collins communicated with Marc DeSisto, Collins agreed to limit the scope of work she perform on Plaintiff's behalf to obtaining a restraining order against Smith.

10. Collins promised to provide DeSisto with documentation supporting the narrow scope of work she performs on Plaintiff's behalf.

11. Collins never disclosed her communications with DeSisto to Plaintiff.

Doc. 110-1 at 2-3. Similarly, the Court finds that the facts are a reiteration of the underling conduct. Plaintiff argues that the information relates to mental culpability. Doc. 121 at 5. Plaintiff argues that she was unaware that Collins knew Portsmouth Abbey School was a Catholic School. The Court is not convinced. In her original Complaint, Plaintiff alleged that "[d]espite *knowing* that Plaintiff had been abused by Smith at Portsmouth Abbey (a Catholic school), none of the lawyers working on her case ever informed Plaintiff that she had a potential lawsuit against Portsmouth Abbey, nor did they inform her about any potential or real statute of limitations for claims against Portsmouth Abbey." Doc. 1-2 at ¶ 18 [emphasis added]. Plaintiff further alleged that Defendants "never explained or informed Plaintiff about this serious conflict of interest: (1) that the firm routinely represented the Catholic Church; and (2) that a potential conflict could exist when Portsmouth Abbey paid for Plaintiff's lawyer fees, give that Plaintiff had a real potential civil lawsuit against the school." *Id.* at ¶ 22. While Collins' deposition provided specific information about her own involvement, her deposition did not provide any newly discovered evidence outside of what Plaintiff originally alleged – lawyers had knowledge that the sexual abuse occurred at a Catholic school.

Plaintiff argues that Collins' deposition revealed a scheme between Defendants and Portsmouth Abbey School. Doc. 121 at 5. Plaintiff argues she was unaware of the alleged arrangement between Collins and Marc DeSisto, the attorney for Portsmouth Abbey School. Doc. 121 at 5. The Court disagrees. In her original complaint, Plaintiff alleged that Defendants "delayed taking meaningful action to advocate for the Plaintiff" on the temporary restraining order, and after Defendants knew the statute of limitations had run, "the firm ended its representation of Plaintiff . . . The entire time [Defendants were] representing Plaintiff invoices

for legal work were sent to and paid by Portsmouth Abbey. The firm never obtained a TRO against Smith." ¶ 19, 21, 26. The Court will not decide whether a "scheme" between Defendants and Portsmouth Abbey existed, but the Court finds that Plaintiff knew of the billing arrangement between Defendants and Portsmouth Abbey at the time she filed her complaint.

Plaintiff further argues that she was unaware that Collins was limiting her work to the TRO "at the direction of DeSisto." Doc. 121 at 5. The Court finds this is a misrepresentation of Collins' deposition testimony. Collins stated in the deposition that DeSantis "made a comment to the effect of, 'Well, how do I know you're not going to send me a bill for something other than her TRO?" Doc. 121-4 at 5. This testimony is related to billing matters, which as the Court has discussed, Plaintiff had prior knowledge of the billing arrangement between Portsmouth Abbey School and Defendants. Plaintiff knew of the underlying conduct at the time she filed her original complaint.

Because Plaintiff knew of the underlying conduct but failed to add the additional claim at the time of the original complaint, she has not shown diligence. Thus, the Court holds that Plaintiff has failed to show good cause under Rule 16(b). Consequently, "the claims are barred." *Gorsuch*, 771 F.3d at 1240.

## II.     Plaintiff failed to offer an adequate explanation for her undue delay under Rule 15.

The Court need not address the Rule 15(a) standard, given its conclusion that Plaintiff has failed to show good cause for her delay under Rule 16(b)(4). *See Gorsuch*, 771 F.3d at 1242. But the Court will also deny the motion to amend pursuant to Rule 15 on the basis that the motion was unduly delayed. "The fact that a motion to amend is filed late does not by itself justify the denial of a motion to amend." *ACC Consultants, Inc. v. Logistics Health, Inc., No*. CIV. 09-1145

JP/RHS, 2011 WL 5212262, at *5 (D.N.M. Feb. 25, 2011) (citing *Minter*, 451 F.3d at 1205). "However, denial of a motion to amend is appropriate if the movant does not provide an adequate explanation for the delay." *Id.* (citing *Minter*, 451 F.3d at 1206). For the reasons discussed, the Court finds that she cannot "provide an adequate explanation for [her] delay," *Tesone*, 942 F.3d at 988.

**IT IS THEREFORE ORDERED**, Plaintiff's Motion for Leave to Amend (Doc. 110) is **DENIED**.

_____
**KEA W. RIGGS**
**UNITED STATES DISTRICT JUDGE**