IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JANE DOE,

    **Plaintiff,**

    v.          No. 1:20-cv-01365-SMD-LF

**LEWIS ROCA ROTHGERBER
CHRISTIE LLP, and DOES 1–60,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on the following motions filed by Defendant Lewis Roca Rothgerber Christie LLP ("Lewis Roca"). The Court has reviewed the parties' submissions, the record, and the relevant law, and for the reasons below:

- Defendant's Daubert Motion and Memorandum to Exclude Testimony of Dawn Hughes (Doc. 145) is DENIED.

- Defendant's Daubert Motion and Memorandum to Exclude Corrina Levine From Presenting Expert Testimony (Doc. 146) is DENIED.

- Defendant's Motion for Summary Judgment on Causation of Plaintiff's Psychological Injuries (Doc. 160) is DENIED.

## BACKGROUND

This case arises out of Plaintiff Jane Doe's claims for child sexual abuse against a well-known, Rhode Island-based boarding school, Portsmouth Abbey School, the institution that hired and retained Plaintiff's abuser, Michael Bowen Smith ("Smith"). Plaintiff attended Portsmouth Abbey from September 2010 to May 2014. In December 2020, Plaintiff filed a complaint against Portsmouth Abbey in the United States District Court for the District of Rhode Island, alleging

that the school administrators failed to report and prevent the abuse despite receiving warnings. *See Doe v. Order of St. Benedict in Portsmouth, Rhode Island*, 717 F. Supp. 3d 220 (D.R.I. 2024). The District of Rhode Island ruled that Plaintiff's claims against the school were procedurally barred by the statute of limitations. *Id.* at 224. In December 2020, Plaintiff also filed this action for professional negligence, breach of contract, and breach of fiduciary duty against Defendant Lewis Roca, based on legal services Lewis Roca provided to Plaintiff in connection with her petition for an order of protection against Smith. *See* Doc. 1-2. Plaintiff alleges that Lewis Roca attorneys knew or should have known Plaintiff had potential claims against Portsmouth Abbey arising from the abuse but never advised Plaintiff of these claims or the relevant statute of limitations. *Id.* at 2. Plaintiff also alleges that Lewis Roca never disclosed that the law firm often defended the Catholic Church in claims brought by abuse survivors or explained that this presented a potential conflict of interest. *Id.* at 2–3.

## DISCUSSION

When ruling on motions to exclude or otherwise limit expert testimony, the Court is mindful that its role as gatekeeper is not intended to serve as a replacement for the adversary system. *Robinson v. Mo. Pac. R.R. Co.*, 16 F.3d 1083, 1090 (10th Cir. 1994). Ultimately, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note to 2000 amendment.

## I. Defendant's Motion to Exclude Dawn Hughes (Doc. 145)

Dawn Hughes is a clinical psychologist and a board-certified forensic psychologist. She has served as clinical assistant professor of psychology at Weill Cornell Medical College since 2010, and maintains an independent practice in clinical and forensic psychology. According to

Plaintiff, Hughes is a leading expert on "institutional betrayal" and will testify on the impact of Lewis Roca and Portsmouth Abbey employees on Plaintiff. *See* Doc. 178.

Defendant does not appear to challenge Hughes' qualifications as an expert in forensic and clinical psychology. Instead, Lewis Roca seeks to exclude Hughes' testimony for three reasons: (1) Hughes is not qualified to testify on the standard of care for attorneys, social workers, or school administrators; (2) Hughes fails to account for other potential causes of Plaintiff's mental distress; and (3) Hughes' opinions regarding grooming are not based on reliable methodologies or underlying principles. Doc. 145 at 1–3.

### a. Legal Standard

Under Federal Rule of Evidence 702, a witness may be qualified as an "expert" by her "knowledge, skill, experience, training, or education." A qualified expert is permitted to testify "in the form of an opinion" if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact understand the evidence or determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

### b. Hughes Does Not Offer Standard of Care Testimony.

Defendant seeks to preclude Hughes from testifying on the propriety of Lewis Roca's or Portsmouth Abbey's conduct. Doc. 145 at 6–9. Defendant challenges the following language from the introduction to Hughes' report: "This forensic psychological evaluation aimed to assess any psychological effects related to childhood sexual abuse, stalking, and harassment by Smith, the Abbey's failure to protect her while she was a student, and the failure of Lewis Roca to adequately counsel her of her rights." Doc. 145-1 at 1. Defendant also points to Hughes'

deposition testimony criticizing Portsmouth Abbey, its employee, Carla Portigal, LCSW, and Lewis Roca for their response to and treatment of Plaintiff.  *See* Doc. 145-2 at 3, 7.

Plaintiff responds that Hughes will only testify regarding damages and causation.  Doc. 178 at 2.  Hughes will not opine on the liability of any Portsmouth Abbey personnel or Lewis Roca attorneys or testify as to whether the underlying conduct occurred.  *Id.* at 5–6.  Hughes clarified in her deposition that she is not offering any opinions on the standard of care for Lewis Roca or social workers.  Doc. 145-2 at 3, 7.

Based on the parties' briefs and exhibits, the Court does not find that Hughes offered any opinion testimony on the standard of care for Lewis Roca attorneys, Portsmouth Abbey administrators, or social workers.

**c. Testimony Regarding Grooming and "Broken Spirit"**

Next, Defendant seeks to exclude Hughes' testimony regarding grooming as "preconceived" and her testimony regarding Plaintiff's "broken spirit" as not based on reliable methodology.  *See* Doc. 145 at 9–13; Doc. 193 at 6–9.

Defendant points to deposition testimony that Hughes could not recall whether Plaintiff's counsel used the word "grooming" before any independent review of documents.  Doc. 145 at 9–10.  By focusing on counsel's potential use of the word "grooming," Defendant ignores that the Hughes report cites multiple examples of Smith's grooming behaviors—for example, showering Plaintiff with praise and attention, and isolating Plaintiff from her parents.  Doc. 211-1 at 197.  Here, Hughes' testimony regarding grooming is supported by specific examples in the record.  Defendant may attempt to disprove the accuracy of these examples at trial, but Hughes' reliance on these assumed facts does not require exclusion of her testimony.  *See Graystone Funding Co., LLC v. Network Funding, LP*, 598 F. Supp. 3d 1228, 1237 (D. Utah 2022) ("the accuracy of the

factual and causal assumptions underlying an expert's testimony is not at issue, so long as there is some support in the record for the expert's assumptions"); *United States v. Crabbe*, 566 F. Supp. 2d 1217, 1224 (D. Colo. 2008) ("the accuracy of the assumption is an issue for trial because it affects the weight of the opinion").

Defendant further argues that Hughes cannot testify on grooming, because Plaintiff has retained a separate expert, Laurie Fortin, to testify on grooming. *See* Doc. 145 at 9–13. To the extent Defendant believes Hughes' testimony will be cumulative of Fortin's testimony on grooming, the Court will address this issue if it arises at trial.

With respect to Plaintiff's "broken spirit," Hughes does not purport to "diagnose" Plaintiff with a "broken spirit." Doc. 178-1 at 18. The phrase appears as part of Hughes' evaluation summarizing factual notes regarding Plaintiff's behaviors and feelings. Doc. 211-1 at 206–07. As Plaintiff points out, Defendant does not argue that these factual notes lacked foundation or were inaccurately recorded. *See* Doc. 178 at 8. Accordingly, the Court declines to exclude Hughes' testimony regarding grooming or Plaintiff's "broken spirit."

### d. Hughes Adequately Considers Alternative Sources of Plaintiff's Injury.

Finally, Defendant argues that Hughes fails to account for other potential causes of Plaintiff's mental distress, such as the recent death of her boyfriend. Doc. 145 at 14. This ignores the portions of Hughes' report recognizing that Plaintiff experienced "several traumatic stressors and adverse life events" including the "unpredicted accidental death of her most recent boyfriend." Doc. 211-1 at 185. To the extent Defendant argues that Hughes failed to "eliminate other possible sources" not identified in its motion (*see* Doc. 193 at 11), Defendant is free to address these possible sources of injury on cross examination.

## II. Defendant's Motion to Exclude Corrina Levine From Presenting Expert Testimony (Doc. 146)

Corrina Levine is a professional therapist who began treating Plaintiff after this action was filed. Plaintiff disclosed Levine as a non-retained expert under Rule 26(a)(2)(C) on February 22, 2023. Doc. 146 at 7. Defendant does not dispute Levine may provide testimony limited to her treatment of Plaintiff but contends that Levine "offered several causation opinions in her deposition that were not included in her treatment notes with Plaintiff." *Id.* at 3–4. Defendant further argues that Levine's testimony should be excluded as duplicative of Hughes' testimony and opinions. *Id.* at 10–12. Plaintiff responds that the challenged testimony relates directly to Levine's treatment of Plaintiff, that Levine's testimony is distinct from Hughes' testimony, and that any duplicative testimony should be addressed at trial. Doc. 180 at 4–7. Defendant also moves to exclude Levine's testimony for failure to provide an expert report under Rule 26(a)(2)(B).

### a. Legal Standard

Under the general expert disclosure rule, Fed. R. Civ. P. 26(a)(2)(A), a party is required to disclose to the other parties the identity of any expert witness it may use at trial. If the witness is retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony, Rule 26(a)(2)(B) also requires the disclosing party to provide a written report prepared and signed by the witness. The requirement of a written report in paragraph (2)(B), however, applies *only* to those experts who are retained or specially employed to provide such testimony in the case or whose duties as an employee of a party regularly involve the giving of such testimony. A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report. *Watson v. United States*, 485 F.3d 1100, 1107 (10th Cir. 2007). Nonetheless, if Rule 26(a)(2)(C) exempts treating physicians from filing an expert report, the party offering the treating physicians must still comply

6

with the disclosure requirements under that rule, which state that the offering party must file a disclosure containing "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." *See Skarda v. Johnson & Johnson*, No. 09-cv-1186, 2014 WL 12792345 (D.N.M. June 30, 2014).

A treating provider who has not been identified as an expert witness pursuant to Rule 26(a)(2)(B) may not provide testimony beyond the scope of treatment. *Parker v. Central Kansas Med. Ctr.*, 57 F. App'x 401, 404 (10th Cir. 2003). If a witness testifies as a fact witness and provides expert testimony under Fed. R. Evid 702, as a treating physician might, a report complying with Rule 26(a)(2)(B) will be required if the proposed opinion testimony of the treating physician extends beyond facts learned during the course of treatment. *E.g.*, *Cadence Education, LLC v. Vore*, No. 17-cv-2092, 2018 WL 2926442, *2 (D. Kan. June 7, 2018).

### b. Plaintiff Adequately Disclosed Levine's Testimony Under Rule 26(a)(2)(C).

Rule 26(a)(2)(B) requires any expert "retained or specially employed to provide expert testimony in the case" to provide a written report of his or her opinions. Fed. R. Civ. P. 26(a)(2)(B). In contrast, a Rule 26(a)(2)(C) "disclosure is considerably less extensive than the report required by Rule 26(a)(2)(B)." *Vincent v. Nelson*, 51 F.4th 1200, 1216 (10th Cir. 2022). A party offering a non-retained expert witness is only required to disclose the "subject matter on which the witness is expected to present evidence" and to provide a "summary of the facts and opinions" to which they would be expected to testify. Fed. R. Civ. P. 26(a)(2)(C).

Defendant does not challenge Plaintiff's disclosure stating "Levine will testify with respect to all aspects of her treatment of Plaintiff, which is ongoing." *See* Doc. 146 at 8 ("Levine was a treating provider for Plaintiff and Defendant does not dispute that she may offer testimony related

to that treatment."). In fact, Defendant had taken Levine's deposition and questioned her regarding her treatment notes by the time Plaintiff disclosed her as a Rule 26(a)(2)(C) witness. Instead, Defendant asserts that "Levine was specifically retained to be a 'treating provider' for Plaintiff" and attaches highlighted deposition testimony discussing Levine's compensation for Plaintiff's treatment. Doc. 146 at 7 n.3; Doc. 146-1 at 2–3; Doc. 199 at 2.

It is possible for a non-retained expert witness designated under Rule 26(a)(2)(C) to morph into a retained expert witness under Rule 26(a)(2)(B). *Melville v. Third Way Ctr., Inc.*, No. 18-cv-01230, 2019 WL 13200605 (D. Colo. July 12, 2019). For example, a treating physician who is asked to review medical records of another health care provider in order to render opinion testimony concerning the appropriateness of the care and treatment of that provider would be specially retained. *Trejo v. Franklin*, No. 04-cv-02523, 2007 WL 2221433 (D. Colo. July 30, 2007). However, the determinative issue is the scope of the proposed testimony, rather than the payment arrangement. *Wreath v. United States*, 161 F.R.D. 448, 450 (D. Kan. 1995). Here, Defendant has not cited any authority for the proposition that Levine's payment arrangement converts her from a non-retained expert under Rule 26(a)(2)(C) to a retained expert required to prepare a report under Rule 26(a)(2)(B). *See Melville*, 2019 WL 13200605 at *5 (rejecting argument that payment was dispositive of whether a designated expert witness is "retained or specially employed").

### c. Levine's Testimony Is Limited to Fact Opinions Formed During the Course of Plaintiff's Treatment.

A treating physician does not need to be certified as an expert witness and may testify as a lay witness if they testify about observations based on personal knowledge, including the treatment of the party. *Guerrero v. Meadows*, 646 F. App'x 597, 602 (10th Cir. 2016) (citing *Davoll v.*

8

*Webb*, 194 F.3d 1116, 1138 (10th Cir. 1999)).  Having reviewed the parties' briefs and exhibits, the Court finds that Defendant has not identified any testimony that is beyond the scope of Levine's treatment of Plaintiff.

Defendant challenges Levine's testimony regarding Plaintiff's dissatisfaction with her Ph.D. program, difficulties in Plaintiff's relationship with her parents, and issues in Plaintiff's dating relationships.  Doc. 146 at 3.  However, as Plaintiff points out, each of these topics arose in the context of Levine's treatment notes or her discussions with Plaintiff during Plaintiff's therapy sessions.  *See* Doc. 146-1 at 5–7; Doc. 180 at 4.  Defendant does not identify any other sources Levine relied on outside of her sessions with Plaintiff.[1]  Instead, Defendant's position appears to be that these topics are opinions "not specifically identified in her treatment notes" because Levine did not use the words "cause" or "because of" in her records.  *See* Doc. 146 at 7.  For example, Levine wrote that Plaintiff experienced "[d]issatisfaction with Ph.D. path and lack of motivation" but did not write that Plaintiff's past trauma was "a cause."  *See* Doc. 146-1 at 5.  Defendant does not cite any authority to support such a narrow definition of the "scope of treatment."  Levine's practice focuses on trauma therapy; she understood that she was hired to address Plaintiff's sexual trauma issues; and as defense counsel highlighted during her deposition, Levine was aware that "this was a sexual trauma litigation case."  Doc. 146-1 at 2, 8; Doc. 199 at 6.  Levine had discussions with Plaintiff about Plaintiff's academic difficulties, her relationship with her parents, intimacy issues, and her relationship with an "older man who had a drug abuse issue," and based on the record before the Court, the treatment notes reflect these discussions.  Doc. 146-1 at 3.

---

[1] Indeed, Defendant cites Levine's failure to review "any of Plaintiff's medical or treatment records from any other providers" as a reason to exclude her testimony.  *See* Doc. 146 at 3.

Levine is not required to write that Plaintiff's prior trauma "caused" or "led to" each of these issues for these topics to fall within to scope of her treatment.

### d. Whether Levine's Testimony Is Duplicative

Finally, Defendant argues that Levine's testimony would be duplicative of Hughes' testimony. *See* Doc. 146 at 10–12. Plaintiff responds that Levine, unlike Hughes, is a treating provider, and that the exclusion of one expert or the other at this stage is not required.[2] The Court does not believe that Levine's testimony, which will be limited to the scope of Plaintiff's treatment, will be cumulative of Hughes' testimony as a forensic psychologist. However, if Levine's testimony becomes cumulative of Hughes' testimony, the Court will address this issue at trial.

Levine may testify as to her treatment of Plaintiff, including Levine's observations of the nature and extent of Plaintiff's injuries; the history given by Plaintiff; the treatment provided and future treatment recommended; and other objectively observable facts learned during the course of treatment. Levine may not provide opinions based on information learned outside of, and unrelated to, Plaintiff's treatment.

## III. Defendant's Motion for Summary Judgment (Doc. 160)

Defendant's Motion for Summary Judgment on Causation of Plaintiff's Psychological Injuries (Doc. 160) asserts that Plaintiff failed to disclose an expert qualified to opine on psychological injury and therefore, cannot meet her burden on causation. Because the Court denies Defendant's motions to exclude the testimony of Hughes and Levine, the Court also finds that Defendant is not entitled to summary judgment on Plaintiff's claims on the ground that she lacks admissible expert evidence of causation.

---

[2] Levine saw Plaintiff for multiple therapy sessions, and the Court also notes that Hughes' opinions are based in part on Levine's treatment records.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Daubert Motion and Memorandum to Exclude Testimony of Dawn Hughes (Doc. 145) is denied; Defendant's Daubert Motion and Memorandum to Exclude Corrina Levine From Presenting Expert Testimony (Doc. 146) is denied; and Defendant's Motion for Summary Judgment on Causation of Plaintiff's Psychological Injuries (Doc. 160) is denied.

_____
**SARAH M. DAVENPORT**
**UNITED STATES DISTRICT JUDGE**