**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**JANE DOE,**

      **Plaintiff,**

      **v.**                          **No. 1:20-cv-01365-SMD-LF**

**LEWIS ROCA ROTHGERBER
CHRISTIE LLP, and DOES 1–60,**

      **Defendants.**

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court on the following motions filed by Defendant Lewis Roca Rothgerber Christie LLP ("Lewis Roca"). The Court has reviewed the parties' submissions, the record, and the relevant law, and for the reasons below:

- Defendant's Daubert Motion and Memorandum to Exclude Testimony of Charol Shakeshaft (Doc. 147) is DENIED.

- Defendant's Daubert Motion and Memorandum to Exclude Testimony of Laurie Fortin, LCSW (Doc. 148) is DENIED.

## BACKGROUND

This case arises out of Plaintiff Jane Doe's claims for child sexual abuse against a well-known, Rhode Island-based boarding school, Portsmouth Abbey School, the institution that hired and retained Plaintiff's abuser, Michael Bowen Smith ("Smith"). Plaintiff attended Portsmouth Abbey from September 2010 to May 2014. In December 2020, Plaintiff filed a complaint against Portsmouth Abbey in the United States District Court for the District of Rhode Island, alleging that the school administrators failed to report and prevent the abuse despite receiving warnings. *See Doe v. Order of St. Benedict in Portsmouth, Rhode Island*, 717 F. Supp. 3d 220 (D.R.I. 2024). The

District of Rhode Island ruled that Plaintiff's claims against the school were procedurally barred by the statute of limitations. *Id.* at 224. In December 2020, Plaintiff also filed this action for professional negligence, breach of contract, and breach of fiduciary duty against Defendant Lewis Roca, based on legal services Lewis Roca provided to Plaintiff in connection with her petition for an order of protection against Smith. *See* Doc. 1-2. Plaintiff alleges that Lewis Roca attorneys knew or should have known Plaintiff had potential claims against Portsmouth Abbey arising from the abuse but never advised Plaintiff of these claims or the relevant statute of limitations. *Id.* at 2. Plaintiff also alleges that Lewis Roca never disclosed that the law firm often defended the Catholic Church in claims brought by abuse survivors or explained that this presented a potential conflict of interest. *Id.* at 2–3.

## LEGAL STANDARDS

Under Federal Rule of Evidence 702, a witness may be qualified as an "expert" by her "knowledge, skill, experience, training, or education." A qualified expert is permitted to testify "in the form of an opinion" if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact understand the evidence or determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. When ruling on motions to exclude or otherwise limit expert testimony, the Court is mindful that its role as gatekeeper is not intended to serve as a replacement for the adversary system. *Robinson v. Mo. Pac. R.R. Co.*, 16 F.3d 1083, 1090 (10th Cir. 1994). Ultimately, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note to 2000 amendment.

## DISCUSSION

**I.    Defendant's Motion to Exclude Charol Shakeshaft (Doc. 147)**

Dr. Charol Shakeshaft is a professor in the Department of Educational Leadership at Virginia Commonwealth University.  Doc. 211-1 at 7.  She has a Ph.D. in educational administration and has served as a professor in that capacity for over 45 years.  *Id.*  Shakeshaft began "studying sexual abuse of students in schools in the 1980s," has received three grants by the U.S. Department of Education, and has authored a Congressionally mandated report on educator sexual misconduct in the United States, published in 2004.  *Id.*

After reviewing relevant documents and deposition testimony (*see* Doc. 211-1 at 10–13), Shakeshaft compiled a report including a summary of events that occurred during and after Plaintiff's time as a student at Portsmouth Abbey.  *See id.* at 30–46.  Shakeshaft concludes with a series of opinions.  Shakeshaft is expected to testify that Portsmouth Abbey failed to provide clear guidelines or training on how to respond to reports of inappropriate conduct; that Portsmouth Abbey did not have appropriate policies or adequate training to prevent Plaintiff from being sexually abused; that the policies that were in place were not communicated, followed, or enforced; and that the response to reports of abuse was insufficient.  *See id.* at 81–82.

Defendant moves to exclude Shakeshaft's proposed opinions and testimony two grounds.  *See* Doc. 147.  First, Defendant argues that Shakeshaft lacks "on-the-ground knowledge and experience implementing and enforcing policies and procedures in a boarding school setting" required to testify as an expert.  *Id.* at 6–7.  Second, Defendant argues that Shakeshaft's opinions are assertions unsupported by experimental, statistical, or data generated by others in the field, and that they cannot be tested or analyzed for error.  *Id.* at 7–19.

### a. Shakeshaft's Qualifications

Defendant objects to Shakeshaft's qualifications as "lack[ing] on-the-ground knowledge and experience implementing and enforcing policies and procedures in a boarding school setting within a relevant time period." *See* Doc. 147 at 6. Defendant also argues that she "conducted little to no investigation into the Portsmouth Abbey environment more specifically, including the size of the student body, its leadership, and/or the layout of the campus and locations where Plaintiff and Smith were purportedly seen to interact." *Id.*

Rule 702 allows expert testimony where a witness is "qualified as an expert by knowledge, skill, experience, training, or education" to offer such opinions. Defendant focuses on a lack of "sufficient practical school-related experience," but ignores Shakeshaft's education and research experience. Defendant also makes no attempt to tie Shakeshaft's lack of recent, "on-the-ground" experience as a school employee to any specific opinion. Similarly, while Defendant objects that Shakeshaft "conducted little to no investigation into the Portsmouth Abbey environment more specifically," Defendant does not explain why the size of the student body, its leadership, or the layout of the campus would affect Shakeshaft's qualifications to testify to school policies on educator sexual misconduct generally.

Defendant also points to the duty and standard of care owned by one person or entity to another under New Mexico and Rhode Island law, and the federal or state regulations that apply to Portsmouth Abbey, arguing Shakeshaft lack of familiarity casts doubt on her opinions and qualifications. *See* Doc. 147 at 6–7. This mischaracterizes the scope of Shakeshaft's anticipated testimony. Shakeshaft is offering opinions on a "systemic failure" in Portsmouth Abbey's policies, training, and response to reports of sexual abuse, not testifying as a legal expert. The reference to "[s]tate and federal entities requir[ing] that school employees are responsible for keeping children

4

safe" is not disputed and does not, as Defendant suggests, form a predicate for Shakeshaft's opinions. *See id.* at 7.

In addition to her academic credentials and extensive research experience, she has been qualified to provide expert testimony on similar subject matter in other cases in this and other districts. *E.g.*, *R.P. v. Santa Fe Pub. Schs.*, No. 1:18-cv-01051-KWR-KK, 2021 WL 1200599 (D.N.M. Mar. 30, 2021); *Doe YZ v. Shattuck-St. Mary's Sch.*, 214 F. Supp. 3d 763, 781 (D. Minn. 2016). The Court finds that Shakeshaft is qualified to testify regarding Portsmouth Abbey's policies, training, and response to reports of sexual abuse as disclosed in her report. While the Court agrees that Shakeshaft's testimony should be limited to the scope of her expertise, the Court does not find, as Defendant suggests, that Shakeshaft offers any opinions on the standards of care applicable to "actors outside a school setting." *See* Doc. 147 at 14.

**b. Reliability and Relevance of Shakeshaft's Opinions**

Defendant raises several challenges to the reliability of Shakeshaft's opinions. These arguments fall into four main categories: (1) lack of "reliable methodology"; (2) lack of familiarity with Rhode Island and other legal standards, particularly the applicable requirements during Plaintiff's time as a student; (3) opinions "based on conjecture and speculation" or disputed facts; and (4) opinions relating to "duties or standards of care for those operating outside the school setting." These arguments largely attack the weight of the evidence and the credibility of Shakeshaft's anticipated testimony, rather than its admissibility.

First, Defendant challenges Shakeshaft's opinions on school policies, grooming, and "conflicts of interest" as lacking reliable methodology. Doc. 147 at 7–14. In *R.P. v. Santa Fe Public Schools*, the district court considered and rejected a similar challenge to the reliability of Shakeshaft's opinions on the adequacy of school policies for prevention of educator sexual

misconduct. No. 1:18-cv-01051-KWR-KK, 2021 WL 1200599 (D.N.M. Mar. 20, 2021). Finding that the *Daubert* factors advanced by defendant were not relevant, the district court in *R.P.* considered Shakeshaft's "significant experience and research in the field of educator sexual misconduct"; her review of "an extensive compilation of relevant school documents"; her "citation to a long list of organizations from which she drew to formulate 'a synthesis' of standards and policies"; whether Shakeshaft was as careful as she would be in her regular professional work; and the lack of evidence that another field would reach more reliable results. 2021 WL 1200599, at *6. The Court finds that the same factors support the reliability of Shakeshaft's testimony on school policies in this case. To the extent that Defendant objects to the use of the term "grooming" in Shakeshaft's report, *see* Doc. 147 at 11–12, Plaintiff is not offering Shakeshaft as an expert on grooming. Shakeshaft clarified in her deposition that she was "not looking for grooming" and that references to "grooming" reflected her notes on the records she reviewed. *See* Doc. 147-2 at 2. To the extent that Defendant objects to Shakeshaft referring to "conflict(s) of interest," *see* Doc. 147 at 12–13, this term also largely appeared in reference to the record, or in the instance cited in Defendant's motion, upon questioning by defense counsel. While the Court would not find Shakeshaft qualified to testify as an expert on legal conflicts of interest, the record does not suggest Shakeshaft is expected to offer such testimony.

Second, Defendant objects that Shakeshaft lacks familiarity with the Rhode Island mandatory reporting law and other requirements that would have applied to Portsmouth Abbey during the time period Plaintiff was a student. *See* Doc. 147 at 10. Defendant argues that the "list of necessary policies that Portsmouth Abbey should have had in place between 2010-2014 has been created without any concern for timing, setting, applicability of particular federal and state regulations, or other circumstances specific to Portsmouth Abbey." *Id*. This appears to refer to a

6

table Shakeshaft created of "items that should be, but were not, included in a specific policy prohibiting and preventing educator sexual misconduct." *See* Doc. 211-1 at 56–62.  To the extent that Defendant objects that this list of policies was not mandated by Rhode Island or federal law, the Court does not find that Shakeshaft is testifying that the absence of these policies violated state or federal law between 2010 and 2014.

Third, Defendant challenges Shakeshaft's opinions as speculative or lacking factual support.  *See* Doc. 147 at 14–18.  For example, Defendant asserts that Shakeshaft cannot testify that having policies in place would have prevented sexual misconduct, citing portions of her report where she states that certain policies at Portsmouth Abbey were not enforced or did not prevent sexual abuse.  *Id.* at 14.  Defendant also challenges Shakeshaft's criticism of the external investigation of Portsmouth Abbey as "speculative," where Shakeshaft's own report and deposition testimony states that she "speculate[s]" that Plaintiff was not included in the investigation report as that likely would have been harmful to the school's standing and reputation.  *Id.* at 18.  These and similar objections either go to the weight of the testimony, which Defendant is free to address on cross examination, or attack conclusions that Shakeshaft does not offer.

Lastly, Defendant asserts that Shakeshaft is a "school person" and should not be allowed to testify to the standard of care for non-school personnel.  The Court agrees that Shakeshaft is not the appropriate witness to testify, for example, to the standard of care for Lewis Roca attorneys. However, by Defendant's own account, Plaintiff stipulates that Shakeshaft is "not going to offer any opinions about anything having to do with Lewis Roca."  Doc. 147 at 19.

## II.    Defendant's Motion to Exclude Laurie Fortin, LCSW (Doc. 148)

Laurie Fortin is a licensed clinical social worker who has over 30 years of experience conducting, supervising, and providing training for forensic interviews in the context of child

abuse. *See* Doc. 211-1 at 171. Fortin is expected to testify on grooming behaviors and the impact on minor victims. *See* Doc. 148-1 at 1. Fortin offers the following opinions in her report: (1) Smith's behaviors were highly consistent with grooming techniques and strategies utilized by known child sexual offenders; (2) Smith's behavior became increasingly characteristic of domestic violence perpetrators; (3) Smith endorsed and utilized cognitive distortions commonly used by known offenders; (4) the manipulative nature of Smith's grooming process significantly contributed to silencing Plaintiff and delaying her disclosure; and (5) the Portsmouth Abbey school environment and culture facilitated Smith's ability to use and abuse his power and authority as a staff member to groom and sexually abuse and exploit Plaintiff. *See* Doc. 177 at 3.

### a. Fortin's Qualifications

Defendant does not challenge Fortin's qualifications to testify on grooming generally but argues that Fortin is not qualified to offer expert testimony regarding school rules, policies, or the boarding school environment. *See* Doc. 148 at 6–9. Plaintiff responds that the purpose of Fortin's anticipated testimony is not to establish the standard of care for Portsmouth Abbey, but to explain how environmental factors can facilitate grooming. Doc. 177 at 4. Fortin herself acknowledged that she did not have "a lot of familiarity" with private boarding schools, and stated at her deposition that she would not be testifying regarding school policies or the standard of care at Portsmouth Abbey. Doc. 148-2 at 7. Defendant suggests that various portions of Fortin's report and testimony impermissibly opine on the adequacy or enforcement of school policies. *See* Doc. 148 at 7. However, the examples cited by Defendant either appear in Fortin's discussion of the records she reviewed or in response to questions from defense counsel during her deposition. For example, Defendant objects to Fortin stating in her report that "both students and staff observed and had knowledge of concerning/suspicious behavior that was out of the ordinary and/or was a

violation of rules/policies." *Id.*; *see* Doc. 148-1 at 17. When asked in her deposition, Fortin explained that her understanding came from deposition testimony from Plaintiff and Portsmouth Abbey staff. *See* 148-2 at 4–5.

The Court finds that Fortin is qualified to testify regarding environmental or cultural factors that facilitate grooming as disclosed in her report. The record before the Court does not reflect that Fortin is opining on the adequacy of school policies or the standard of care applicable to schools like Portsmouth Abbey.

### b.  Reliability and Relevance of Fortin's Opinions

Defendant next argues that Fortin does not possess sufficient facts to support her opinions, which must be excluded as speculative. *See* Doc. 148 at 9–10. This objection appears to come from Fortin's statement in her deposition that she did not review any school policies in forming her opinions. *Id.* at 9. Again, the Court does not find that Fortin offers any opinions regarding the adequacy of school policies or the boarding school environment generally. And, as Fortin explained in her deposition, her understanding that Smith violated Portsmouth Abbey rules was based on deposition testimony from Portsmouth Abbey staff. *See* Doc. 148-2 at 4–5. Defendant does not point to any evidence contradicting Fortin's understanding, but to the extent Defendant wishes to show Fortin's understanding relies on disputed facts, Defendant is free to do so on cross examination.

Finally, the Court rejects Defendant's argument that Fortin's opinions are irrelevant because Smith is not a party to this case. *See* Doc. 148 at 11–12. As Plaintiff points out, the relationship between Plaintiff and Smith is a key factor in damages. *See* Doc. 177 at 8. Because the average juror is not familiar with grooming behaviors or their impact on minor victims, the

9

Court finds that Fortin's expertise will aid the jury in understanding the dynamics of that relationship.

**CONCLUSION**

For the foregoing reasons, Defendant's Daubert Motion and Memorandum to Exclude Testimony of Charol Shakeshaft (Doc. 147) is denied; and Defendant's Daubert Motion and Memorandum to Exclude Testimony of Laurie Fortin (Doc. 148) is denied.

IT IS SO ORDERED.

_____
**SARAH M. DAVENPORT**
**UNITED STATES DISTRICT JUDGE**