**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**JANE DOE,**

**Plaintiff,**

**v.** **No. 1:20-cv-01365-SMD-LF**

**LEWIS ROCA ROTHGERBER CHRISTIE LLP,**

**Defendant.**

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Defendant Lewis Roca Rothgerber Christie LLP's ("Lewis Roca") Motion for Summary Judgment on Plaintiff's Claims (Counts I, II and III) Against Defendant Lewis Roca (Doc. 163). The Court has reviewed the parties' submissions, the record, and the relevant law, and for the reasons below, the Motion is DENIED.

**BACKGROUND**

This case arises out of Plaintiff Jane Doe's claims for child sexual abuse against a well-known, Rhode Island-based boarding school, Portsmouth Abbey School, the institution that hired and retained Plaintiff's abuser, Michael Bowen Smith ("Smith"). Plaintiff attended Portsmouth Abbey from September 2010 to May 2014. In December 2020, Plaintiff filed a complaint against Portsmouth Abbey in the United States District Court for the District of Rhode Island, alleging that the school administrators failed to report and prevent the abuse despite receiving warnings. *See Doe v. Order of St. Benedict in Portsmouth, Rhode Island*, 717 F. Supp. 3d 220 (D.R.I. 2024). The

Rhode Island complaint asserted claims for sexual abuse, intentional infliction of emotional distress, negligent supervision, hiring, or retention, and failure to report suspected child abuse.

The District of Rhode Island ruled that Plaintiff's claims against the school were procedurally barred by the statute of limitations. *Id.* at 224. In December 2020, Plaintiff also filed this action for professional negligence, breach of contract, and breach of fiduciary duty against Defendant Lewis Roca, based on legal services Lewis Roca provided to Plaintiff in connection with pursuing a temporary restraining order ("TRO") against Smith. *See* Doc. 1-2. Plaintiff alleges that Lewis Roca attorneys knew or should have known Plaintiff had potential claims against Portsmouth Abbey arising from the abuse but never advised Plaintiff of these claims or the relevant statute of limitations. *Id.* at 2. Plaintiff also alleges that Lewis Roca never disclosed that the law firm often defended the Catholic Church in claims brought by abuse survivors or explained that this presented a potential conflict of interest. *Id.* at 2–3.

Defendant moves for summary judgment on the following:

- Whether Defendant's representation of Plaintiff presented a conflict of interest;
- Whether Defendant had a duty to advise Plaintiff of potential claims against Portsmouth Abbey;
- Whether Defendant complied with the terms of the engagement letter;
- Whether Defendant breached its duty of loyalty to Plaintiff;
- Whether Defendant breached its duty of confidentiality to Plaintiff; and
- Whether the breach of fiduciary duty claim is duplicative of Plaintiff's other claims.

Defendant argues that it is entitled to judgment in its favor on each of these issues, and it is therefore entitled to summary judgment as to Plaintiff's claims for professional negligence, breach of contract, and breach of fiduciary duty.

**LEGAL STANDARD**

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Butler v. Daimler Trucks N. Am., LLC*, 74 F.4th 1131, 1140 (10th Cir. 2023). The moving party bears the burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."[1] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where, as here, the moving party does not bear the ultimate burden of proof at trial, it may satisfy its summary judgment burden by pointing out to the court a lack of evidence on an essential element of the nonmovant's claim. *Fox v. Transam Leasing, Inc.*, 839 F.3d 1209, 1218 (10th Cir. 2016). Once this requirement is met, the nonmovant can defeat summary judgment by showing that there is a genuine dispute of material facts. *Id.* The nonmovant's response must "set forth specific facts by reference to affidavits, deposition transcripts, or other exhibits to support the claim."[2] *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006). The Court then reviews the proffered evidence and, drawing all reasonable inferences in favor of the nonmoving party, determines whether the facts "establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001).

[1] The Court will incorporate only the proffered facts that provide helpful for background purposes or are material to the Defendants' arguments below.

[2] Defendant asserts that by failing to identify them as "Additional *Material* Facts" (emphasis added), Plaintiff has conceded they are immaterial and the Additional Facts therefore should be disregarded. *See* Doc. 187 at 7. Defendant cites no authority to support this position. While the Court declines to disregard Plaintiff's Additional Facts in their entirety, the Court will incorporate only the Additional Facts as they become relevant to the Defendants' arguments below. Plaintiff's Additional Facts will be cited to as though they had been correctly lettered rather than numbered (e.g., 1 = A, 2 = B, 3 = C).

## DISCUSSION

### I. Conflicts of Interest Between Representation of Plaintiff and Other Lewis Roca Clients

Defendant moves for summary judgment on Plaintiff's allegation that a conflict of interest existed as to Defendant's representation of Plaintiff or as to Defendant's acceptance of payment from Portsmouth Abbey for Plaintiff's legal fees. Doc. 163 at 18–24.

New Mexico Rule of Professional Conduct 16-107(A) defines two types of concurrent conflicts of interest: (1) where "the representation of one client will be directly adverse to another client"; and (2) where "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." Committee commentary further provides: "Even where there is no direct adverseness, a conflict of interest exists if there is a significant risk that a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities or interests." Additionally, "[a] lawyer's own interests should not be permitted to have an adverse effect on representation of a client," and "a lawyer may not allow related business interests to affect representation."

New Mexico Rule of Professional Conduct 16-108(F) also prohibits attorneys from accepting payment from a third party, unless (1) the client gives "informed consent"; (2) there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship; and (3) information relating to representation of a client is protected. Rule 16-108(F)(1)-(3). "Informed consent" is defined as "agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the

material risks of and reasonably available alternatives to the proposed course of conduct." NMRA Rule 16-100(E).

Defendant argues that Plaintiff was not directly adverse to any other client of Defendant and Defendant's responsibilities to its other clients did not limit its representation of Plaintiff in pursuing a TRO. Doc. 163 at 18–22. Defendant further argues that Portsmouth Abbey's payment of Plaintiff's legal fees did not create a conflict of interest, pointing to testimony from Bobbie Collins, the Lewis Roca associate who worked on Plaintiff's TRO matter, and Marc DeSisto, Portsmouth Abbey's general counsel, that DeSisto did not instruct Collins to limit her representation of Plaintiff. *Id.* at 22–24; Def. UMF ¶ 47.

In response, Plaintiff argues that Defendant's effort to limit its representation of Plaintiff to the TRO application was itself the result of conflicts of interest. Doc. 168 at 21. Plaintiff points to communications between Kathleen McChesney, a consultant to Portsmouth Abbey, and Scott Browning, a partner at Lewis Roca, discussing Plaintiff as a potential referral. *Id.* at 22. McChesney and Browning previously worked together providing consulting services to a Catholic religious organization facing accusations of sexual abuse,[3] and McChesney knew that Browning had represented dioceses across the country. Pl. UMF ¶ Y; Pl. UMF ¶ Z. McChesney wrote to Browning regarding Plaintiff: "I have a new client in Albuquerque who may be in need of representation with regard to being abused in a religious school … If it happens, it would probably be a small matter, i.e., assisting her in obtaining a restraining order against the offender who was a teacher in the school." Pl. UMF ¶ W. Browning wrote back to McChesney, stating that he would

[3] Defendant argues it is improperly vague and argumentative to characterize this as "McChesney ha[ving] a prior relationship with Browning" but does not dispute that McChesney and Browning previously worked together. *See* Doc. 187 at 16.

"make sure we do the right thing from you[r] perspective in terms of business issues," that he had "full discretion in such matters," that the matter would be "handled as you deem proper," and that "we are always willing to tackle items or tasks simply as a favour or courtesy to you if that is helpful."[4] Pl. UMF ¶ X. Plaintiff also points to communications between McChesney and Portsmouth Abbey official John Perriera after learning that McChesney recommended Lewis Roca to Plaintiff. Perreira told McChesney that "could present some legal challenges," because he was concerned "if there was a law firm that was going to sue the Abbey . . . why would we pay a firm in advance of a litigation?" Pl. UMF ¶ AD; Pl. UMF ¶ AE.

While Defendant did not represent Portsmouth Abbey, Defendant received over $13 million in legal fees between 2013 to 2017 from Catholic diocese clients, including for work defending sex abuse claims.[5] Pl. UMF ¶ BM. The Court is not persuaded that this created "direct adverseness" between Plaintiff and Defendant's other clients, or that the Portsmouth Abbey's payment of Plaintiff's fees on its own created a conflict of interest. However, a jury could conclude that Defendant's responsibilities to these other clients and Defendant's business interests created enough of a risk that its representation of Plaintiff would be materially limited. Based on the record before the Court, there are genuine issues of material fact regarding whether Defendant had a conflict of interest in its representation of Plaintiff, and Defendant is not entitled to summary judgment on this issue.

[4] Defendant objects that Plaintiff's asserted fact contains "argumentative language to embellish her 'facts'" but does not dispute that the quoted language accurately reflects Browning's response to McChesney. *See* Doc. 187 at 15.
[5] Defendant argues this is "immaterial as Lewis Roca has demonstrated that its representation of religious institutions was irrelevant to the scope of its representation of Plaintiff" but does not dispute the fees received or that the fees were "primarily for work defending those clients from sex abuse claims." *See* Doc. 187 at 9.

## II. Failure to Advise on Claims Against Portsmouth Abbey

Defendant argues that as a matter of law, Defendant did not have a duty to advise Plaintiff of her potential claims against Portsmouth Abbey. Doc. 163 at 25–34. Defendant argues that the engagement letter governed the scope of Defendant's duty to Plaintiff, and because "there was no duty to advise Plaintiff as to potential claims against third parties, there is no negligence." From there, Defendant concludes that it is entitled to summary judgment on Plaintiff's claims to the extent they rely on a duty to advise Plaintiff as to her claims against Portsmouth Abbey.

With respect to Plaintiff's professional negligence and breach of fiduciary duty claims, an attorney's duty to a client is "to exercise the degree of knowledge or skill ordinarily possessed by others in his or her profession similarly situated." *Resolution Trust Corp. v. Barnhart*, 862 P.2d 1243, 1247 (N.M. Ct. App. 1993). Breach of duty is generally a question to be decided by the fact-finder. *Spencer v. Health Force, Inc.*, 107 P.3d 504, 511 (N.M. 2005); *Lessard v. Coronado Paint & Decorating Center, Inc.*, 168 P.3d 155, 167 (N.M. Ct. App. 2007). In comparison, a legal malpractice claim based on a breach of contract theory is governed by general contract law principles and must be assessed under the terms of the contract. *Dentsply Int'l, Inc. v. Lewis & Roca, LLP*, No. 12-cv-0104, 2013 WL 12126765, *3 (D.N.M. Sep. 24, 2013). To show a breach of contract claim, a plaintiff may not rely upon evidence that the lawyer merely breached the general, non-contractually created duty of care. *Id.*

Defendant argues "[i]t is likely that the New Mexico Supreme Court would interpret the scope of duty of an attorney to be the scope of the engagement letter." Doc. 163 at 26. Defendant cites no New Mexico cases to support this proposition, and does not explain why New Mexico courts would be more likely to rule in line with the cases Defendant cites relying on New York

law, rather than other jurisdictions that "extend the duty of an attorney beyond the scope of the engagement letter." However, the Court need not speculate as to whether New Mexico courts would "extend the duty of an attorney beyond the scope of the engagement letter." The engagement letter provided in relevant part:

> The representation described in this letter is for preparation and processing through final hearing in a permanent restraining order in the event a TRO is granted. At this time, we are not committing to post-restraining order issuance procedures or other litigated matters. With respect to such matters, if the situation develops to a point where it would seem such action ought to, or must, be undertaken, we will discuss with you and attempt to reach independent fee agreements satisfactory to you and the Firm.

Def. UMF ¶ 24. Even if Plaintiff cannot proceed against Defendant on a breach of contract theory for failure to act outside the scope of the engagement letter, the engagement letter itself contemplates other litigated matters. While Defendant did not commit to represent Plaintiff in such matters, the terms of the engagement letter indicate that Defendant would discuss other matters with Plaintiff "if the situation develops to the point where it would seem such action ought to, or must, be undertaken."

Defendant argues that no reasonable person could understand "such matters" to include potential causes of action against Portsmouth Abbey. Doc. 163 at 29. Plaintiff argues that "other litigated matters" could *only* refer to potential claims against Smith and Portsmouth Abbey and that no reasonable person could conclude otherwise. Doc. 168 at 33–34. Defendant argues the situation "did not develop further to trigger any additional action during the time that Lewis Roca represented Plaintiff" because the underlying events that formed the basis for any claims against Portsmouth Abbey occurred prior to Defendant's representation. Plaintiff argues that the "situation" refers to Defendant's handling of the Plaintiff's TRO matter and other potential claims. Doc. 168 at 34.

The Court is not persuaded that "other litigated matters" or "situation" should be read as narrowly as either party urges. Rather, the relevant inquiry is whether circumstances arose "where it would seem such action ought to, or must, be undertaken." The record before the Court shows at least some awareness on the part of Lewis Roca attorneys of the potential claims against Portsmouth Abbey. When contacted regarding a potential referral by a Portsmouth Abbey consultant, Browning alluded to "making sure we do the right thing from you[r] perspective in terms of business issues." Pl. UMF ¶ X. Collins, the Lewis Roca associate who worked on Plaintiff's TRO matter, testified that she understood that the claim against Portsmouth Abbey was being "handled separately."[6] Pl. UMF ¶ BJ. It is undisputed that no one from Lewis Roca ever discussed potential claims against Portsmouth Abbey with Plaintiff, whether for purposes opening a new matter with Lewis Roca or referral to another firm. Whether this breached the terms of the engagement letter—or a corresponding duty determined by the scope of the engagement letter—is a question for the jury.

## III. Temporary Restraining Order Proceedings

Defendant also moves for summary judgment on the allegation that it failed to meet the obligations set forth in the engagement letter. The engagement letter provides:

> Our firm will represent you in making in an application for a temporary restraining order (TRO) against Michael Bowen Smith, requesting the redaction of your personal address and telephone number currently in the Court records, and making any other written or oral demands upon Mr. Smith to cease communication with you and your friends in connection with the TRO request.

[6] Defendant challenges Plaintiff's characterization of this statement as an "excuse" but does not dispute the cited testimony. *See* Doc. 187 at 17.

Def. UMF ¶ 24. Defendant points to evidence that Plaintiff wanted to seal the records and vacate the hearing set on her pro se TRO application, which Collins accomplished; that Collins advised Plaintiff that she needed to file in domestic violence court to obtain an order of protection under the Family Violence Protection Act; and that the ultimate failure to obtain a TRO was due to Plaintiff's decision not to pursue the application. Doc. 163 at 35–40. Plaintiff responds with evidence that Defendant ultimately failed to obtain an order of protection; that Collins failed to conduct a factual investigation into Plaintiff's claims, even to the extent necessary to support a TRO application; that Plaintiff had evidence to support a TRO application but Defendant failed to take action and later discouraged Plaintiff that her evidence was stale; and that Collins discouraged Plaintiff from proceeding with her TRO application by advising Plaintiff that she could be exposed to a malicious abuse of process claim.

A jury could conclude that these efforts met Defendant's obligations as they related to Plaintiff's TRO application. There is also competing expert testimony regarding Collins' advice, and a jury could conclude that regardless of the ultimate failure to obtain a TRO, the advice provided fell below the standard of care. On a motion for summary judgment, the Court is required to draw all inferences in favor of the nonmovant. Because there are genuine issues of material fact as to whether Defendant met its obligations with the TRO application, Defendant is not entitled to summary judgment on this issue.

## IV. Breach of Fiduciary Duty

Defendant devotes the longest section of its Motion to various arguments that summary judgment should be granted as to Plaintiff's breach of fiduciary duty claim. *See* Doc. 163 at 41–53. Defendant argues that Plaintiff "improperly seeks liability for a breach of fiduciary duty

against Lewis Roca on bases which are duplicative of her professional negligence claim." Doc. 163 at 43. The Court declines to dismiss either claim at this point but reserves the right to review the matter as trial approaches.

Defendant's next subsection asserts that it did not breach the duty of loyalty by accepting payment from Portsmouth Abbey, and attacks the allegation that Defendant breached the duty of loyalty by failing to disclose conflicts of interest. This asserted basis for summary judgment appears to rely on a finding that no conflicts of interest existed that may have influenced Defendant's representation of Plaintiff. Because the Court denies summary judgment on that issue, Defendant is not entitled to summary judgment "to the extent Plaintiff's arguments in support of her breach of fiduciary duty claim rely on such bases."

Finally, the Court declines to enter summary judgment on the breach of fiduciary duty claim "to the extent it relies on a breach of confidentiality." Neither the initial or amended complaint alleged breach of confidentiality. Rather, Defendant raises the issue of "informed consent" in relation to its third party compensation argument, and Plaintiff responds with the larger narrative that Collins and DeSisto tacitly agreed to limit Collins' work on Plaintiff's file, either in the four communications supported by the record or in other implied communications. Plaintiff produces no evidence tending to show that confidential information was disclosed in the communications that Plaintiff alleges resulted in a tacit agreement. Plaintiff also argues that Plaintiff did not provide informed consent, and that the harm that resulted was "manifest in the success of DeSisto's efforts to prevent Plaintiff from suing the school and to limit the legal services and advice she would be provided by her attorneys." Doc. 168 at 49. However, this goes to conflict of interest, not breach of confidentiality. *See id.* ("In the context of attorney

disqualification, if an attorney has a disqualifying conflict, '[t]he court need not inquire whether the confidential information was actually revealed[]'"). The alleged harm to Plaintiff—tacit agreement to limit Plaintiff's representation—derives from Portsmouth Abbey's payment of Plaintiff's legal fees, not from the communications processing those payments.

The Court denies summary judgment on the breach of fiduciary duty claim.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment on Plaintiff's Claims (Counts I, II and III) Against Defendant Lewis Roca (Doc. 163) is DENIED.

IT IS SO ORDERED.



**SARAH M. DAVENPORT**
**UNITED STATES DISTRICT JUDGE**